Filed 2/14/23  Marriage of Hinojosa and Chain CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of JAVIER HINOJOSA and SANDRA ROSS CHAIN. | D079650 |
| JAVIER GARCIA HINOJOSA, | |
| Appellant, | (Super. Ct. No. 20FL011047C) |
| v. | |
| SANDRA ROSS CHAIN, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Jinsook Ohta, Judge.  Affirmed.

William J. Baker, for Appellant.

Sandra Ross Chain, in pro. per. for Respondent.

Javier Garcia Hinojosa (Husband) and Sandra Ross Chain (Wife) married in 1999 and began their marital dissolution in 2020.  In February 2021, Wife filed a request for order (RFO) seeking $26,000 in attorney fees and costs.  Following a hearing, the court granted the request without stating

an amount due. In a subsequent hearing, the court ordered Husband to pay attorney fees as a sanction in connection with Wife's motion to quash a medical subpoena he issued. Again, the court directed Wife's attorney to submit documentation of the fees and costs, but it did not state a specific dollar amount in the order. After Husband filed an "Objection and Opposition," the court ordered him to pay $32,344.02 in total attorney fees and costs.

Husband contends that the court exceeded its authority by granting more in attorney fees than Wife requested in her February RFO, which he also argues denied him due process. He also contends that the court did not make required findings to support the attorney fees award, and that the court abused its discretion because, he alleges, Wife has a higher net income than he does. As we explain, the court did not award more in attorney fees than Wife requested in her RFO; nor was Husband's due process denied. Even if the court had awarded more in attorney fees than Wife initially requested, because of its authority to augment requests, the court did not exceed its authority. The court also made the required findings, and its findings did not abuse its discretion. Accordingly, we affirm.

BACKGROUND AND PROCEDURAL FACTS

Husband and Wife married in May 1999. On December 18, 2020, Husband filed a petition to dissolve their marriage. Wife responded.

In February 2021, Wife filed an RFO in which she sought, among other things, attorney fees. She indicated she had incurred $6,000 in attorney fees to that point, and she estimated she would incur an additional $20,000.

In his March 18, 2021 reply to the RFO, Husband contested the attorney fees request and asked the court to direct Wife to make job contacts and seek work. He contended Wife had the ability to pay her own attorney

2

fees because she was partially supported by her wealthy family. He claimed he could not afford her attorney fees because they had accrued debt and client payments upon which he relied for income had been delayed. Husband asked the court to set guideline and spousal support amounts based on a monthly income of $14,261.

At the April 1, 2021 hearing, Wife asked the court to use $25,000 per month as the amount for the income analysis, and Husband asked the court to use $14,000 per month instead. Wife calculated the $25,000 monthly income based on a gross annual income of $400,000 and $235,000 in deposits from independent clients in 2000. She said Husband represented to her that he earned $25,000 per month, and her declaration stated that they spent "upwards of $25,000 per month on living expenses." She submitted bank statements and spreadsheets. She also stated in her declaration that Husband had sole and exclusive control over their community income and assets and claimed she could not rely on family for support.

Wife's declaration indicated she could not maintain employment outside the home because she had been diagnosed with cancer in 2020, which led to diagnosis of a medical condition that causes neuroendocrine tumors to grow in her body.

Husband represented that he earned about $20,000 per month in 2020 and that the gross deposits to the bank account were closer to $21,000. Husband also argued he was paying the health insurance premiums for the family.

The court found taxable income of $25,000 a month by Husband and attributed to Husband monthly health premium costs. It found a disparity in income and access to funds, and it determined that Husband was able to pay

attorney fees for both parties. The court ordered Wife's attorney to provide an updated declaration with billing statements.

Husband argued that once he paid spousal support to Wife, she would have sufficient income to pay for her attorney because she would have more net disposable income than he had. Husband also expressed concern that the court did not place a ceiling on the attorney fees amount. He asked the court to deny the attorney fees award or at least set a maximum amount.

The court told Husband, "With regard to attorneys' fees, your argument is heard. When you're meeting and conferring, you can dispute with [Wife's counsel] if you feel that any actions have not been appropriate or reasonable or in bad faith with regard to the prosecution or the—with regard to the litigation in this case, and that it has unreasonably added to the fees; otherwise, the order of the Court as of attorneys' fees accrued to date stand."

The court filed a findings and order after hearing for the April 1, 2021 hearing regarding Wife's RFO on June 11, 2021. It found Husband had a gross monthly self-employment income of $25,000, with monthly medical premiums of $3,937, and Wife had a gross income of $0. However, it recognized that it had not yet been provided with all the income information it needed to issue interim support orders and affirmed the stipulation between the parties to appoint a forensic accountant paid for from community funds. The court found there was a disparity in income and access to funds, and it found that Husband had the ability to pay the fees and costs of both parties. It directed Wife to pay her own expenses, effective April 15, 2021, with a few exceptions. It ordered Husband to pay Wife's attorney fees and costs through the date of the order. The order directed Wife's attorney to prepare a declaration with a summary of the fees accompanied by account

4

statements. The court reserved jurisdiction to adjust the amount of fees to account for any irregularities or improprieties.

Following the hearing, Husband issued a subpoena on March 19 for all of Wife's medical records. Wife's attorney attempted to meet and confer with Husband's counsel, to no avail. On April 6, 2018, Wife filed a motion to quash the subpoena and sought sanctions against Husband.

At the related hearing on June 8, which was continued to June 10, 2021, the court found the request for all of Wife's medical information was too broad. The court ordered sanctions against Husband for failing to meet and confer, ordering Husband to pay Wife's attorney fees associated with having to bring the motion to quash. The court directed Wife's attorney to send a declaration and billing information to Husband's attorney so the parties could agree on the amount claimed. If they could not agree, the court would resolve their dispute.

The court also told the parties it had reviewed the previous declaration from Wife's attorney and found it had sufficient information regarding the attorney fees it had previously ordered Husband to pay. The court gave Husband the opportunity to make specific objections to the sufficiency of the declaration or the appropriateness of the fees. It clarified that it had previously found disparity between the parties, so it was leaving it to the parties to resolve their concerns; if they could not agree or if Husband found the amount unreasonable, he should file an RFO.

The court's findings and order after hearings for the June 8 and 10, 2021 hearing was filed August 30, 2021. In that order, the court granted sanctions for failing to meet and confer regarding the scope of the medical subpoena. The sanctions were payment of attorney fees through the June 8 and 10 hearing.

On July 8, 2021, Husband filed an "Objection and Opposition" to the request for attorney fees, explaining he could not afford Wife's fees and he does not earn the income alleged by Wife. He believed "such a massive attorney fee award at this stage" was premature.

Wife responded with an ex parte application and order requesting the court strike or deny the objection, contending it was an improper attempt to reargue the April 1 findings and order after hearing. The court told the parties that "[a]ny attempt to relitigate the issue of fees must be brought as a motion for reconsideration, if timely."

On August 6, Wife's counsel filed a declaration in which he explained that Code of Civil Procedure section 1008 requires a motion for reconsideration be filed within 10 days after service of the order. He argued Husband did not timely file a motion for reconsideration; Wife asked the court to strike or deny the objection.

Husband's attorney clarified in a filing on August 10 that he did not find any irregularities or improprieties in the declarations or fee statements, so he did not make specific objections to the amount of attorney fees stated therein. Husband's objections were general because he could not afford the fees.

In response, Wife again requested the court strike or overrule the objection.

The court held a hearing on August 17, 2021. Because of some confusion regarding the hearing time, Husband's counsel did not appear when the matter was first called. In Husband's absence, the court said it was construing the objection as an untimely motion for reconsideration, and it denied that motion and ordered payment of the outstanding attorney fees.

6

Once Husband's counsel appeared, the court explained that Husband's willingness to settle the matter did not change the way litigation had been conducted up to that point; nor did it change the finding that there was a disparity in income and access to funds. The court asked Husband to address how the request was timely if it was a request for reconsideration and gave him an opportunity to object to the attorney fee bills or to otherwise challenge the appropriateness of Wife's attorney's expenses.

Husband's counsel explained his objection was not a motion to reconsider because the court had not set an amount of attorney fees. He agreed there were no irregularities or improprieties in the fee statements and nothing unreasonable in the billings. He requested that the court order a specific dollar amount in attorney fees and costs to start a clock for a reconsideration motion.

The court then ordered Husband to pay $32,344.02 to Wife based on Wife's attorney's declarations and billing statements, noting that Husband did not find the claimed amount unreasonable or inaccurate and noting no objections to those details.

In the related findings and order after hearing, drafted by Wife's attorney and filed October 4, 2021, there is a statement that the court construed Husband's objection as an untimely motion for reconsideration.

Husband appealed the order to pay attorney fees and costs on October 12, 2021.

DISCUSSION

I. Appealability

Wife characterizes Husband's objection and opposition as a motion for reconsideration of the original, April 2021 order to pay attorney fees and costs. She contends the appeal is untimely because it was filed more than 10

7

days after the first attorney fee order was served on Husband. (See Civ. Proc. Code, § 1008, subd. (a); Cal. Rules of Court, rule 8.108(e).) We view the circumstances differently.

The court initially ordered attorney fees in April 2021, based on Wife's February 2021 RFO, but it retained jurisdiction to resolve any issues regarding the amount of attorney fees. In June 2021, the court issued sanctions, awarding attorney fees related to the motion to quash, again retaining jurisdiction to resolve any issues regarding the amount of attorney fees. At the August 2021 hearing, before Husband's attorney appeared or explained the purpose of the objections, the court indicated it would construe the objection as an untimely motion for reconsideration. However, once Husband's attorney appeared, he explained that Husband was not seeking reconsideration; he was seeking a more specific order. Once the court ordered payment of $32,344.02 in attorney fees, rather than file a motion for reconsideration, Husband opted to appeal the award.

Although Husband argues in his appeal that the family court erred by failing to make required findings to award *any* attorney fees and costs, his appeal also challenges the dollar amount of the award more specifically because he contends it was improper to award more than an amount sought. Husband could not make this contention until the court ordered a specific

8

amount paid, and that did not occur until August 17, 2021. Accordingly, his October appeal, which addresses that issue, is timely.[1]

## II. Attorney Fees Awards

### A. Legal Principles

The Family Code[2] authorizes pendente lite attorney fee awards to help equalize parties' litigation resources. (§ 2030, subd. (a)(1); *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1315-1316.) These awards can be augmented or modified "as may be reasonably necessary," including after any appeal has been concluded. (§ 2030, subd. (c); *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056 (*Cryer*).) Section 2030, subdivision (a) requires the court to find whether an award of attorney's fees and costs is appropriate, whether there is a disparity in access to funds, and whether one party is able to pay the fees for both parties. (§ 2030, subd. (a)(2).) "If the findings demonstrate disparity in access and ability to pay, the court *shall* make an order awarding attorney's fees and costs." (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 [requisite findings, which can be made in writing or orally on the record, require order to pay fees and costs]; *In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 21, 26; see also Cal. Rules of Court, rule 5.427

---

[1] Although we find the appeal timely for the reasons we have explained, we note that Code of Civil Procedure section 1008's time limit does not always foreclose a motion for reconsideration of pendente lite attorney fees sought under Family Code section 2030 because pendente lite attorney fee awards can be augmented or modified "as may be reasonably necessary." (Fam. Code, § 2030, subd. (c), *Cryer, supra*, 198 Cal.App.4th at p. 1056.) At least one case has held that the jurisdictional requirements of Code of Civil Procedure section 1008 can be displaced when there are repeated family law pendente lite attorney fee requests. (See *In re Marriage of Hobdy* (2004) 123 Cal.App.4th 360, 367, 371-373.)

[2] Unspecified statutory references are to the Family Code.

[requiring court in marriage dissolution proceeding to rule on motion for attorney fees within 15 days of the hearing].)  If a court fails to make express findings, a party must demonstrate prejudice for relief.  (*Morton*, at p. 1051.)

"The family court has considerable latitude to make a just and reasonable fee award" (*Cryer*, *supra*, 198 Cal.App.4th at p. 1054) and retains authority to augment or modify attorney fee awards "as may be reasonably necessary" throughout litigation, including after an appeal has been concluded.  (§ 2030, subd. (c); *Cryer*, at p. 1056.)

Section 271 separately authorizes the trial court to assess fees and costs against a party for uncooperative conduct that frustrates settlement.  (See *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1495.)  This award does not rely on the applicant spouse's "financial need."  (§ 271; see *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 289-293 (*Fong*).)  A court may issue sanctions during the lawsuit.  (*Feldman*, at p. 1495.)

We review pendente lite attorney fee awards and sanctions under section 271 for an abuse of discretion.  (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1166 [attorney fees]; *In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 82 [sanctions].)  " 'The discretion invoked is that of the trial court, not the reviewing court, and the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made.  [Citations.]' [Citation.]"  (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866 (*Keech*).)

## B. Analysis

### 1. The Court Awarded Less in Attorney Fees than Requested

Wife's February RFO sought an anticipated $26,000 in attorney fees and costs, which included $6,000 already expended.  The court separately ordered Husband to pay Wife's attorney fees in connection with her motion to

quash the medical subpoena as a sanction for failing to meet and confer. Courts have authority to award those fees without relying on the applicant spouse's "financial need." (§ 271; see *Fong*, *supra*, 193 Cal.App.4th at pp. 289-293.)

The sanctioned attorney fees, which Husband did not find unreasonable or irregular, totaled $6,946.75, comprised of $1,773.25 from March 24 through April 1, 2021, and $5,173.50 from April 2 to June 8, 2021. Although we do not know the amount claimed by Wife's attorney in response to the February RFO because that declaration is not in the record, we can deduce that the court's order included $25,397.27 in attorney fees and costs for litigation through the date of the June hearing. We derive this number from subtracting the $6,946.75 in sanctions from the total amount awarded, $32,344.02. What remains is $25,397.27 attributable to attorney fees and costs separate from the sanctions. Thus, the court did not grant an amount in attorney fees greater than the $26,000 requested by Wife in her February RFO because the remaining amount was a sanction.

Although it makes no difference in the present case, we note that even were we to accept Husband's claim that Wife received more in attorney fees than she initially requested, we would not find an abuse of discretion. A court retains authority to augment or modify attorney fee awards "as may be reasonably necessary" throughout litigation. (§ 2030, subd. (c); *Cryer*, *supra*, 198 Cal.App.4th at p. 1056.) Limiting the awardable amount to the amount a party anticipates at the outset of litigation would be inconsistent with the court's authority to augment and modify the award.

### 2. There Was No Due Process Violation

Husband was not denied due process. He vigorously challenged the award of attorney fees at the April 1 hearing, and the court nonetheless

11

awarded the fees accrued through that date. When the parties appeared in June, Husband again challenged the attorney fees award, and the court told him that if he believed the specific amount requested was unreasonable or he disagreed, he could return to the court via a request for order on that portion. In August, the court asked Husband if he had any objections to the actual billing or the appropriateness of the expenditures and attorney fees submitted by Wife's attorney. Husband did not raise an objection on that point. Thus, Husband was given notice and an opportunity to be heard regarding the amount of attorney fees before court made the award final. (See *Midway Venture LLC v. County of San Diego* (2021) 60 Cal.App.5th 58, 77-78 [discussing due process requirements].)

### 3. The Court Made the Required Findings

Before granting Wife's February RFO for attorney fees, the court considered the parties' circumstances and made a finding that there was a disparity in income because Husband had a gross income of $25,000 per month and Wife had a gross income of $0 per month. The court had before it evidence submitted by Wife that Husband represented to her that he made $25,000 per month, Wife's statement that the couple spent "upwards of $25,000 per month on living expenses," and bank statements and spreadsheets submitted by Wife.

The court also concluded there was a disparity in access to funds, and Husband had the ability to pay the costs and fees of both parties. The court based this conclusion, at least in part, on its finding that Husband was earning $25,000 per month and Wife was earning $0. Although Husband disputed Wife's claim that she was unable to work, her declaration explained she had health conditions that precluded employment outside the home because she had been diagnosed with cancer in July 2020, as well as a

12

condition that causes neuroendocrine tumors to grow in her body. Further, Wife's declaration stated that Husband had sole and exclusive control over community income and assets.

We are not persuaded by Husband's argument that the court improperly compared the gross salaries of Husband and Wife in awarding attorney fees, other than the sanctions award, to Wife. Nothing in the statute requires the court to consider the net income of the parties instead of their gross incomes when evaluating pendente lite attorney fee obligations. Further, this is not a situation in which the court failed to consider the expenses of the parties, as was the case in *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, at pages 253-254, the case upon which Husband relies. Instead, the court considered all the information before it, including Wife's ability to work, the length of time since her last employment, Husband's earning capacity, the parties' income, assets, and standard of living, and their financial obligations, all subject to additional information provided by a forensic accountant. (See § 4320.) Moreover, after Husband argued that there was no large community estate or access to funds and seeking a limit to the payment of attorney fees, the court told Husband, "With regard to attorneys' fees, your argument is heard. When you're meeting and conferring, you can dispute with [Wife's counsel] if you feel that any actions have not been appropriate or reasonable or in bad faith with regard to the prosecution or the—with regard to the litigation in this case, and that it has unreasonably added to the fees; otherwise, the order of the Court as of attorneys' fees accrued to date stand." Thus, the record "reflect[s] an actual exercise of discretion and a consideration of the statutory factors in the exercise of that discretion." (*Alan S.*, at p. 254.)

13

Although Husband argues on appeal that he was not in a better position to pay the fees than Wife was because there "are no liquid marital assets," "no retirement funds," and "no savings, stocks or money market accounts," but "at least $290,000 in personal and business debt," there is evidence in the record challenging these assertions. For instance, the 2019 tax return showed a retirement account, and Wife's declaration revealed a financial aid form, the FAFSA, for their oldest child indicated an investment valued at $150,000. Additionally, some of the debt Husband claimed was for a non-recourse loan to his business, for which he was not personally liable, and it was not yet due and payable. These facts support the court's conclusion that Husband could afford the attorney fees.

The court's order is consistent with its conclusion that Wife lacked access to a means to pay the attorney fees. Her declaration indicated that Husband denied her access to their joint bank account, cancelled or reduced credit card limits, and had the sole and exclusive control of community income and assets. Moreover, the court did not order Husband to pay all of Wife's attorney fees for the pendency of the matter. As Wife points out in her respondent's brief, the court ordered payment of the attorney fees only through the hearing date, after which time Wife regained access to some funds because the court then ordered payment of support and deductions needed for health insurance. Husband was not responsible to pay Wife's attorney fees once Wife had income and access to funds.

Considering the evidence in a light most favorable to the order, we cannot conclude no judge could reasonably conclude there was an income disparity or that Husband had the ability to pay the costs and fees of both parties. (See *Keech*, *supra*, 75 Cal.App.4th at p. 866.)

14

## DISPOSITION

The order is affirmed.   Husband to pay costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.